The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 21, 2019

## 2019COA27

**No. 18CA0842, *People v. Slaughter* — Constitutional Law —
Colorado Constitution — Equal Protection; Crimes — Assault in
the Second Degree; Criminal Law — Sentencing — Mandatory
Sentences for Violent Crimes**

A division of the court of appeals considers whether charging a

defendant with second degree assault by strangulation under

section 18-3-203(1)(i), C.R.S. 2018, with a crime of violence

sentence enhancer under section 18-1.3-406(2)(a)(I)(A), C.R.S.

2018, violates a defendant's equal protection rights under the

Colorado Constitution. The division concludes that it does.

Under the Colorado Constitution, if two criminal statutes

provide for different penalties for identical conduct, a person

convicted under the statute with the harsher penalty is denied

equal protection of the laws unless there are reasonable differences or distinctions between the prohibited behaviors.

The division reviews the disparate sentences available for identical strangulation conduct and concludes that, because there is no intelligible standard for distinguishing between the prohibited acts under section 18-3-203(1)(b), on the one hand, and the prohibited acts under section 18-3-203(1)(i) when charged with a crime of violence sentence enhancer, on the other hand, the prosecution's attempt to charge defendant with the latter combination violates equal protection. Thus, the prosecution's attempt to charge defendant with the combination of section 18-3-203(1)(i) with a crime of violence sentence enhancer under section 18-1.3-406(2)(a)(I)(A) would be unconstitutional as applied to him.

COLORADO COURT OF APPEALS     **2019COA27**

---

Court of Appeals No. 18CA0842
Arapahoe County District Court No. 16CR2045
Honorable Andrew C. Baum, Judge

---

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Darius Javonmarquise Slaughter,

Defendant-Appellee.

---

ORDER AFFIRMED

Division I
Opinion by JUDGE TERRY
Taubman and Fox, JJ., concur

Announced February 21, 2019

---

George H. Brauchler, District Attorney, Jacob Edson, Chief Deputy District Attorney, Centennial, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Jessica Sommer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellee

¶ 1        A prosecutor seeking to charge an accused with felony strangulation has multiple charging options available under Colorado criminal statutes.

¶ 2        The crime can be charged under the first degree assault statute, section 18-3-202(1)(g), C.R.S. 2018.  To obtain a conviction under that statute, the prosecution would have to prove that the accused caused serious bodily injury to the victim.

¶ 3        If the prosecution wants to dispense with the requirement to prove serious bodily injury, it can charge the accused under the second degree assault statute, section 18-3-203, C.R.S. 2018.  Two charging options are available for a strangulation crime under that statute, neither of which would require proof of serious bodily injury: under subsection (1)(b) or under subsection (1)(i).

¶ 4        A charge under subsection (1)(b) would require proof of use of a deadly weapon.  Unless charged with a crime of violence sentence enhancer, a strangulation charge under subsection (1)(i) would not require proof of use of a deadly weapon.

¶ 5        As we will discuss, the penalty available for a strangulation charged under subsection (1)(i) if charged as a crime of violence under section 18-1.3-406(2)(a)(I)(A), C.R.S. 2018, is substantially

1

more severe than if an accused is charged merely under subsection (1)(b), even though conviction for both crimes would require proof of use of a deadly weapon.

¶ 6    The prosecution charged defendant, Darius Javonmarquise Slaughter, with strangulation under the second degree assault statute, section 18-3-203(1)(i). If it were allowed to charge Slaughter under subsection (1)(i) and also charge a sentence enhancer under the crime of violence sentencing statute, such charging would subject him to harsher and disparate sentencing, as compared with other persons accused of engaging in the same conduct, based solely on the prosecution's charging decision. Thus, his right to equal protection under the Colorado Constitution would be violated. For that reason, we conclude that the district court did not err in denying the prosecution's motion to add a charge under the crime of violence statute, and we affirm the court's order dismissing the added crime of violence charge.

## I. Procedural History

¶ 7    The People filed this interlocutory appeal in accordance with section 16-12-102(1), C.R.S. 2018, and C.A.R. 4(b)(3). The prosecution charged Slaughter with second degree assault by

strangulation under section 18-3-203(1)(i) for allegedly strangling the victim with his hands.  The People later moved to add a new count under the crime of violence sentencing statute, section 18-1.3-406(2)(a)(I)(A), based on their assertion that Slaughter used his hands as a deadly weapon.

¶ 8    Though the trial court initially granted the motion, it later reconsidered that ruling on Slaughter's motion and dismissed the charged sentence enhancer.  The court reasoned that, as applied to Slaughter, such a charge violated his right to equal protection of the laws guaranteed by the Colorado Constitution.

## II. Constitutional and Statutory Background

¶ 9    Under the Fourteenth Amendment to the United States Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.

¶ 10    In harmony with the Federal Constitution, our supreme court has held that the right to equal protection of the laws is included within due process of law as provided in article II, section 25, of the Colorado Constitution.  *People v. Marcy*, 628 P.2d 69, 83 (Colo. 1981).  Even so, distinguishing *United States v. Batchelder*, 442

U.S. 114 (1979), which construed the Federal Constitution, the court in *Marcy* emphasized that, under the Colorado Constitution, "equal protection of the laws requires that statutory classifications of crimes be based on differences that are real in fact and reasonably related to the general purposes of criminal legislation." *Marcy*, 628 P.2d at 74. In this respect, equal protection under the Colorado Constitution is more far-reaching than it is under the Federal Constitution. Slaughter argues an equal protection violation only under the Colorado Constitution.

¶ 11 Equal protection of the law assures that those who are similarly situated will be afforded like treatment. *People v. Mozee*, 723 P.2d 117, 126 (Colo. 1986). When two criminal statutes provide different penalties for identical conduct, a defendant is denied equal protection under the law if he is convicted under the harsher statute. *Id.* And, "when separate statutes prescribe different penalties for what ostensibly might be different acts but offer no intelligent standard for distinguishing between and among these acts, those statutes deny equal protection under the law." *People v. Griego*, 2018 CO 5, ¶ 35 (citing *Marcy*, 628 P.2d at 75).

¶ 12    Under the Colorado Constitution, "if a criminal statute [provides] different penalties for identical conduct, a person convicted under the harsher penalty is denied equal protection unless there are reasonable differences or distinctions between the proscribed behavior[s]." *People v. Stewart*, 55 P.3d 107, 114 (Colo. 2002).

¶ 13    In keeping with Colorado's equal protection guarantee, we scrutinize the statute under which defendant was charged, as well as the statute under which the prosecution seeks to charge him and the broader statutory scheme, to determine whether these standards are met.

### III. Standards of Review and Principles of Statutory Construction

¶ 14    We review the constitutionality of statutes de novo. *Colo. Union of Taxpayers Found. v. City of Aspen*, 2018 CO 36, ¶ 13. Statutes are presumed constitutional, *id.*, and a party challenging the constitutionality of a statute must prove unconstitutionality beyond a reasonable doubt, *TABOR Found. v. Reg'l Transp. Dist.*, 2018 CO 29, ¶ 15.

¶ 15    We construe defendant's arguments as raising a challenge to the relevant statutes as applied to the prosecution's charging

decision. To prevail on an as-applied constitutional challenge, the challenging party must establish that the statute is unconstitutional under the circumstances in which the plaintiff has acted or proposes to act. *Qwest Servs. v. Blood*, 252 P.3d 1071, 1085 (Colo. 2011).

¶ 16 The interpretation of sections 18-3-203(1)(i) and 18-1.3-406(2)(a)(I)(A) is a question of law which we review de novo. *Cowen v. People*, 2018 CO 96, ¶ 11. When interpreting a statute, our primary purpose is to ascertain and give effect to the General Assembly's intent. *Id.* We start by examining the plain meaning of the statutory language. *Id.* We give consistent effect to all parts of the statute and construe each provision in harmony with the overall statutory design. *Id.*, ¶ 13.

### IV. The Disparate Charging Options Available for the Same Strangulation Conduct Render the Statutory Scheme Ambiguous

¶ 17 Before 2016, a prosecutor seeking to charge an accused for strangulation of a victim could charge under the first degree assault

6

statute, section 18-3-202.  Subsection (1)(a) of that statute provided, and still provides:

> (1) A person commits the crime of assault in the first degree if:
> (a) With intent to cause serious bodily injury to another person, he causes serious bodily injury to any person *by means of a deadly weapon*[.]

§ 18-3-202(1)(a) (emphasis added).

¶ 18    Also before 2016, a prosecutor seeking to charge an accused for strangulation of a victim under the second degree assault statute was limited to charging under subsections (1)(b), (1)(d), or (1)(g) of section 18-3-203(1), C.R.S. 2015, each of which also required either proof of use of a deadly weapon or the infliction of bodily injury.

¶ 19    In 2016, the General Assembly amended the second degree assault statute to add the provision under which defendant was charged.  Ch. 327, sec. 1, § 18-3-203, 2016 Colo. Sess. Laws 1328. That section states that a person commits second degree assault if,

> [w]ith the intent to cause bodily injury, he or she applies sufficient pressure to impede or restrict the breathing or circulation of the blood of another person by applying such pressure to the neck or by blocking the nose or

7

mouth of the other person and thereby causes bodily injury.

§ 18-3-203(1)(i). Thus, for the first time, an accused could be charged with felony assault for strangulation without the need for the prosecution to prove use of a deadly weapon or serious bodily injury.

¶ 20 The prosecution now seeks to add a charge against Slaughter under the crime of violence sentencing statute, section 18-1.3-406(2)(a)(I)(A) and (II)(C), based on the use of his hands as a deadly weapon. As we have noted above, the prosecution, at least in theory, could have charged him with second degree assault (not specifying acts amounting to strangulation) under section 18-3-203(1)(b).

¶ 21 Subsection (1)(b) provides that a person commits second degree assault if, "[w]ith intent to cause bodily injury to another person, he or she causes such injury to any person *by means of a deadly weapon.*" (Emphasis added.) An accused convicted under subsection (1)(b) is subject to sentencing under the crime of violence sentencing statute, but with an important difference: under the legislature's 2016 amendment to section 18-3-203(2)(c)(II),

8

"notwithstanding the provisions of [the crime of violence sentencing statute], the court is not required to sentence the defendant [convicted under subsection (1)(b)] to the department of corrections for a mandatory term of incarceration." § 18-3-203(2)(c)(II).

¶ 22    As a result, a person convicted under subsection (1)(b) would be subject to potentially lighter sentencing — even to probation — than the prosecution seeks to impose here if Slaughter is convicted under subsection (1)(i), even though a subsection (1)(b) offense is a per se crime of violence.

¶ 23    Given the potential for disparate charges and sentencing arising from the exact same conduct, we conclude that the interplay between sections 18-3-203(1)(b), 18-3-203(1)(i), and 18-1.3-406(2)(a)(I) renders ambiguous the statutory scheme for the charging and sentencing of second degree assault by strangulation.

¶ 24    We therefore review the legislative history of the 2016 amendments to determine the legislative intent behind these statutes.  *See People in Interest of M.W.*, 796 P.2d 66, 68 (Colo. App. 1990) (statute susceptible of more than one interpretation must be construed in light of its legislative intent and purpose); *see also Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 470 (Colo. 1998)

(to determine legislative intent, an appellate court may consider the textual context, the statute's legislative history, the state of the law before the legislative enactment, the problem addressed by the legislation, and the relationship between the particular legislation and other relevant legislative provisions).

## V. Legislative History of 2016 Amendments

¶ 25    Section 18-3-203(1)(i) originated as House Bill 16-1080. Statements from the Legislative Council Staff Research Note accompanying the bill show that the legislature intended the new strangulation subsection to institute a change from prosecutors' past practice.  *See* Gen. Assemb. Legis. Council, Research Note for H.B. 1060, 70th Gen. Assemb., 2d Reg. Sess. (2016).  Before the passage of House Bill 16-1080 and Senate Bill 16-102 in 2016, prosecutors charged strangulation under section 18-3-203(1)(b), *see Assault by Strangulation: Hearing on H.B. 16-1080 before the H. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statement of Mark Hurlbert, Assistant Arapahoe County District Attorney), which at that time carried with it crime of violence sentencing, including mandatory minimums.

¶ 26　　According to testimony before the General Assembly in 2016, the requirement to prove that hands were deadly weapons under subsection (1)(b) was seen as an impediment to proving that an accused who committed strangulation through the use of hands had committed a felony.  Particularly in more rural jurisdictions, prosecutors had difficulty obtaining expert testimony that would be necessary to establish that a defendant's hands were used as a deadly weapon so that a felony level crime could be proved.  *Assault by Strangulation: Hearing on H.B. 16-1080 before the H. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statement of Mark Hurlbert, Assistant Arapahoe County District Attorney).  As a result, strangulation offenses were resulting in convictions only for a class 1 misdemeanor under the third degree assault statute, section 18-3-204, C.R.S. 2018, or for a municipal code violation.  *See Assault by Strangulation: Hearing on H.B. 16-1080 before the H. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statement of Rep. Mike Foote, sponsor of H.B. 16-1080).

¶ 27　　A perception emerged that a serious form of domestic violence was not resulting in appropriately severe sentencing.  *See Assault by Strangulation: Hearing on H.B. 16-1080 before the S. Judiciary*

11

*Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Apr. 27, 2016) (statement of Rep. John Cooke, Member, S. Judiciary Comm., sponsor of H.B. 16-1080) ("We want to increase this to a felony[.]"); *see also Assault by Strangulation: Hearing on H.B. 16-1080 before the H. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statement of Rep. Mike Foote, sponsor of H.B. 16-1080).

¶ 28    Reflecting these concerns, the legislature amended the first and second degree assault statutes.  New statutory language was proposed to deal specifically with strangulation, resulting in the enactment of section 18-3-202(1)(g) and section 18-3-203(1)(i).

¶ 29    The new addition to the first degree assault statute criminalizes strangulation that is done "[w]ith the intent to cause serious bodily injury" and also "causes serious bodily injury."  § 18-3-202(1)(g).

¶ 30    More of interest to us here, section 18-3-203(1)(i) for the first time specifically included acts that amount to strangulation in the second degree assault statute.  One of the bill's sponsors pointed out that "[t]he elements [of section 18-3-203(1)(i)] don't require the finding of hands as a deadly weapon."  *Assault by Strangulation: Hearing on H.B. 16-1080 before the H. Judiciary Comm.*, 70th Gen.

12

Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statement of Rep. Mike Foote, sponsor of H.B. 16-1080).

¶ 31    Also unlike section 18-3-202(1)(g), section 18-3-203(1)(i) does not mention the element of serious bodily injury.

¶ 32    While House Bill 16-1080 was the impetus for the addition of the first and second degree assault by strangulation crimes in sections 18-3-202(1)(g) and 18-3-203(1)(i), Senate Bill 16-102 eliminated mandatory minimum sentences for certain other second degree assault crimes in section 18-3-203(2)(c)(II). The legislative history does not answer whether the legislature intended the sentencing disparities that would result for strangulation crimes based on a prosecutor's charging decisions, or whether the 2016 General Assembly simply ran out of time during the legislative session to reconcile the House and Senate bills before their enactment. In the legislature's discussion of these bills, we find no mention of whether a prosecutor could add a crime of violence sentence enhancer or whether doing so would cause an equal protection problem.

¶ 33    In any event, the legislature did not demonstrate a clear intent to prevent the prosecution from charging subsection (1)(i) with a

13

crime of violence sentence enhancer pursuant to section 18-1.3-406(2)(a)(I)(A). Thus, it would be permissible under the statutory scheme to do as the People request — to charge defendant with a crime of violence sentence enhancer — unless such charging would result in an equal protection violation.

¶ 34     We turn next to whether such a violation would arise if the People were allowed to so charge Slaughter.

### VI. Strangulation Charges Under Sections 18-3-202(1)(g), 18-3-203(1)(b), and 18-3-203(1)(i)

¶ 35     It is important to the analysis here that, unlike subsection (1)(b) of the second degree assault statute, which requires proof that an accused intentionally caused bodily injury to another person "by means of a deadly weapon," § 18-3-203(1)(b), subsection (1)(i) allows a conviction of second degree assault by strangulation without requiring proof of use of a deadly weapon.

¶ 36     A prosecutor anticipating difficulty in proving *serious* bodily injury may avoid charging strangulation under the first degree assault statute and opt instead to bring charges under the second degree assault statute, which requires only proof of bodily injury. And a charge under section 18-3-203(1)(i) would not require proof of

14

use of a deadly weapon, unless a crime of violence sentence enhancer is also charged.

A. Comparative Sentencing Options for Strangulation Charges

¶ 37     We now delve deeper into the sentencing discrepancies created by the statutory scheme, with an eye toward how those discrepancies affect equal protection analysis.

1. Equal Protection Standards

¶ 38     To determine whether the charging of a crime violates the defendant's right to equal protection of the laws guaranteed by the Colorado Constitution, we begin by examining the conduct prohibited by the applicable criminal statutes. *See Stewart*, 55 P.3d at 114-18; *Marcy*, 628 P.2d at 73-82. We examine the statutory language of the described crimes to determine if the conduct they address contains differences that are both real in fact and reasonably related to the general purposes of criminal legislation. *Marcy*, 628 P.2d at 74.

¶ 39     If criminal statutes provide for different penalties for identical conduct, a person convicted under the statute with the harsher penalty is denied equal protection unless there are reasonable

15

differences or distinctions between the prohibited behaviors. *People v. Richardson*, 983 P.2d 5, 6-7 (Colo. 1999).

## 2. Discussion

¶ 40 As mentioned above, second degree assault by strangulation under section 18-3-203(1)(i), when charged with a crime of violence sentence enhancer based on the use of a deadly weapon under section 18-1.3-406(2)(a)(I)(A), carries with it a harsher penalty than does a charge of second degree assault causing bodily injury with a deadly weapon under section 18-3-203(1)(b). Even though the prosecution in both instances would have to present proof of use of a deadly weapon, the former offense, when charged as a crime of violence, subjects a defendant to a much harsher penalty than does the latter offense.

¶ 41 We conclude that the conduct prohibited by subsection (1)(i) when charged with the crime of violence sentence enhancer, as compared with the conduct prohibited by subsection (1)(b), lacks differences that are both real in fact and reasonably related to the general purposes of criminal legislation.

## a. Second Degree Assault by Strangulation Without Crime of Violence Charges

¶ 42    Given the current statutory scheme, an accused charged under the second degree assault statute *with use of a deadly weapon* (not specifying strangulation) under section 18-3-203(1)(b), and without crime-of-violence sentence enhancement, is eligible for a flexible sentencing range that includes an option for probation. *See* § 18-3-203(2)(c)(II) (For such a crime, "the court is not required to sentence the defendant to the department of corrections for a mandatory term of incarceration.").

¶ 43    Without crime of violence sentence enhancement, an accused charged and convicted under section 18-3-203(1)(i), *even though not charged as having used a deadly weapon*, is eligible for a presumptive sentence ranging from two to eight years of imprisonment.  *See* § 18-1.3-401(1)(a)(V)(A), (1)(b)(XVIII), (10)(a), C.R.S. 2018.  Still, such an accused can be eligible for sentencing below that presumptive range, as provided in section 18-1.3-401(6), and could be sentenced instead to probation.

## b. With Crime of Violence Charges

¶ 44     If — as the prosecution seeks to do here — an accused is charged with both strangulation under the second degree assault statute, section 18-3-203(1)(i), *and* with a crime of violence sentence enhancer under section 18-1.3-406(2)(a)(I)(A) and (2)(a)(II)(C), and the jury finds against the accused on both charges, the sentencing range does not include a probation option.

¶ 45     The minimum sentence for such a conviction would be five years, and the maximum sentence would be increased to sixteen years.  *See* § 18-1.3-406(1)(a) (requiring mandatory minimum sentencing to incarceration for persons convicted of crimes of violence, ranging from "at least the midpoint in, but not more than twice the maximum of, the presumptive range provided for such offense in section 18-1.3-104(1)(a), as modified for an extraordinary risk crime pursuant to section 18-1.3-401(10), without suspension"); § 18-1.3-406(7) (requiring sentencing court to add five years for conviction of crime of violence, consecutive to any other sentence).

### c. Comparison of Sentencing Outcomes

¶ 46    Clearly, the sentence for the crime of strangulation under the second degree assault statute, section 18-3-203(1)(i), if charged with a crime of violence sentence enhancer, is substantially harsher even than one charged under section 18-3-203(1)(b), which requires use of a deadly weapon.  We next consider whether it is an equal protection violation to allow such disparate sentencing results based solely on a prosecutor's charging decision.

### B. Equal Protection Violation Based on Disparate Treatment

¶ 47    Courts have an obligation "to 'avoid interpretations that invoke constitutional deficiencies.'" *Catholic Health Initiatives Colo. v. City of Pueblo, Dep't of Fin.*, 207 P.3d 812, 822 (Colo. 2009) (quoting *Adams Cty. Sch. Dist. No. 50 v. Heimer*, 919 P.2d 786, 792 (Colo. 1996)).  "[A]n evenhanded application of the law turns on reasonably intelligible standards of criminal culpability." *Marcy*, 628 P.2d at 80.  As a result, any definition of a crime "must be sufficiently coherent and discrete that a person of average intelligence can reasonably distinguish it from conduct proscribed by other offenses." *Id.* at 80-81.

¶ 48    As demonstrated by the sentencing scenarios discussed above, the prosecution's decision to try to charge defendant with second degree assault by strangulation under section 18-3-203(1)(i) with the crime of violence sentence enhancer for use of his hands as deadly weapons, if agreed to by the court, would put him in a position to receive a much harsher sentence than if he had just been charged with second degree assault using his hands as deadly weapons under section 18-3-203(1)(b).  This creates the potential for greatly disparate treatment of defendants facing strangulation charges where it is alleged that their hands were used as deadly weapons.  *See People v. Mumaugh*, 644 P.2d 299, 301 (Colo. 1982) (To allow a defendant "to suffer a more severe penalty for conduct indistinguishable from that which carries a lesser penalty violates equal protection of the laws.").

¶ 49    The People have not shown how anything other than the prosecutor's charging decision could be used to justify disparate sentences for two defendants who engaged in precisely the same conduct.

¶ 50    The requirement of equal protection that the differences in prohibited conduct must be "real in fact" is meant to exclude

differences that are merely technical, conceptual, or semantic. *See Marcy*, 628 P.2d at 78 (proscribed conduct "without a sufficiently pragmatic difference" is insufficient in equal protection inquiry); *People v. Calvaresi*, 188 Colo. 277, 281-82, 534 P.2d 316, 318 (1975) ("Classification of persons under the criminal law must be under legislation that is reasonable and not arbitrary," and, to comport with equal protection, a difference in sentencing regimes must not rest on "shifting sands of semantics.").

¶ 51    To allow such disparate results in outcomes for strangulation cases, given no meaningful distinction in the criminal conduct and based solely on the prosecutor's inclination to charge in a particular manner, is indeed to deny equal protection of the law. The potential for disparate charging decisions causes the statutory classification of these crimes to lack "differences that are real in fact and reasonably related to the general purposes of criminal legislation." *Marcy*, 628 P.2d at 71, 74 (finding equal protection violation where "the crime of first degree murder by extreme indifference [was] not sufficiently distinguishable from second degree murder to warrant the substantial differential in penalty authorized by the statutory scheme").

¶ 52     We therefore conclude that, as applied to the circumstances

here, where the prosecution seeks to charge Slaughter with

strangulation under section 18-3-203(1)(i) together with the crime

of violence sentence enhancer under section 18-1.3-406(2)(a)(I)(A),

such charging would cause a violation of defendant's right to equal

protection of the laws, and thus would be unconstitutional.

### VII. Deference to Prosecutorial Discretion is Unwarranted When Such Discretion Results in an Equal Protection Violation

¶ 53     The People rely on section 18-1-408(7), C.R.S. 2018, which

codifies the concept of prosecutorial discretion.  That section

provides:

> If the same conduct is defined as criminal in different enactments or in different sections of this code, the offender may be prosecuted under any one or all of the sections or enactments subject to the limitations provided by this section.  It is immaterial to the prosecution that one of the enactments or sections characterizes the crime as of lesser degree than another, or provides a lesser penalty than another, or was enacted by the general assembly at a later date than another unless the later section or enactment specifically repeals the earlier.

§ 18-1-408(7).

¶ 54    Courts are "properly hesitant to examine the decision whether to prosecute." *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) (explaining why the prosecution's charging decisions are "particularly ill-suited to judicial review").

¶ 55    *People v. Bagby*, 734 P.2d 1059, 1061-62 (Colo. 1987), discussed factors to be considered by a court in determining whether the legislature's enactment of a specific statute precludes prosecution under a general statute. *Id.* Because it did not discuss equal protection, however, *Bagby* is not instructive in this context, and we look, instead, to our supreme court's precedent regarding the limits imposed on prosecutorial discretion by equal protection requirements.

¶ 56    Though prosecutors generally have discretion in charging decisions, we agree with the district court that the prosecution is not permitted to charge an accused in a manner that would result in a violation of equal protection if the defendant were found guilty and sentenced to a harsher penalty than another accused might receive for identical assault conduct. *See Stewart*, 55 P.3d at 118 ("Generally, the prosecution has discretion to determine what charges to file when a defendant's conduct violates more than one

23

statute. *See* § 18-1-408(7), 6 C.R.S. (2001). There are certain circumstances in which this general rule does not apply." (citing *People v. Smith*, 938 P.2d 111, 115-16 (Colo. 1997); *Bagby*, 734 P.2d at 1061-62)).

¶ 57    As the supreme court said in *Griego*, "when separate statutes prescribe different penalties for what ostensibly might be different acts but offer no intelligent standard for distinguishing between and among these acts, those statutes deny equal protection under the law." *Griego*, ¶ 35.

¶ 58    "[T]o overcome a challenge under the equal protection clause, the statutory classification [of crimes] must turn on 'reasonably intelligible standards of criminal culpability,' and any definition of a crime must be 'sufficiently coherent and discrete that a person of average intelligence can reasonably distinguish it from conduct proscribed by other offenses.'" *Id.* at ¶ 36 (quoting *Marcy*, 628 P.2d at 80-81).

¶ 59    As in *Griego*, identical behavior could result in different charging decisions and "dramatically different punishments." *Id.* at ¶ 38. If defendant A engages in an act of strangulation and is charged with second degree assault with a deadly weapon for the

use of his hands under subsection (1)(b), but is eligible for probation, while defendant B is charged under subsection (1)(i) with assault with a deadly weapon by strangulation with his hands as a deadly weapon, but is eligible only for a minimum sentence of five years in prison because the crime was charged with a crime of violence sentence enhancer, defendant B's right to equal protection is violated because there is no intelligible standard for distinguishing between the prohibited acts.

¶ 60    The prosecution cannot rely on its prosecutorial discretion to sidestep Slaughter's equal protection challenge.

## VIII. "Inherent Deadliness"

¶ 61    Slaughter points out the inherent deadliness of the strangulation conduct described by section 18-3-203(1)(i).  But to resolve the equal protection violation raised in this case, we do not need to address his assertion that all cases of strangulation are committed with a deadly weapon.  The potential we have described for disparate sentencing treatment of persons accused and convicted of strangulation, based solely on prosecutorial discretion, is enough by itself to establish the equal protection violation of which defendant complains.

## IX. Conclusion

¶ 62     We conclude that the combination of the prosecution's charge against Slaughter under section 18-3-203(1)(i) and the crime of violence charge under section 18-1.3-406(2)(a)(I)(A) renders these statutory provisions unconstitutional as applied to him.  Because of this equal protection violation, the prosecution's motion to charge him with a crime of violence sentence enhancer under section 18-1.3-406(2)(a)(I)(A) should have been denied, and we affirm the district court's order dismissing the added crime of violence count.

JUDGE TAUBMAN and JUDGE FOX concur.