The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 22, 2019

## 2019COA130

**No. 19CA0482, *People v. Lee* — Constitutional Law — Colorado
Constitution — Equal Protection; Crimes — Assault in the
Second Degree — Strangulation**

In this People's appeal, a division of the court of appeals holds

that a defendant may not be charged with second degree assault for

the same manual strangulation conduct under both subsections

(1)(b) and (1)(i) of section 18-3-203, C.R.S. 2018, for two

reasons.  First, these subsections carry different maximum

penalties, so charging the same strangulation conduct under both

sections would violate equal protection.  Second, the legislative

history reveals the General Assembly's intent that all strangulations

be charged under section 18-3-203(1)(i), rather than under the

more general subsection.  Accordingly, the division affirms the

district court's order dismissing the second degree assault charged

under section 18-3-203(1)(b) and the crime of violence counts.

COLORADO COURT OF APPEALS     **2019COA130**

Court of Appeals No. 19CA0482
Arapahoe County District Court No. 18CR1431
Honorable Ben L. Leutwyler, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Dearies Deshonne Austin Lee,

Defendant-Appellee.

ORDER AFFIRMED

Division VI
Opinion by JUDGE FREYRE
Fox and Welling, JJ., concur

Announced August 22, 2019

George H. Brauchler, District Attorney, Jacob Edson, Chief District Deputy
Attorney, Centennial, Colorado, for Plaintiff-Appellant

Megan A. Ring, Colorado State Public Defender, Alison E. Blackwell, Deputy
State Public Defender, Centennial, Colorado, for Defendant-Appellee

¶ 1    In this People's appeal, brought under section 16-12-102(1), C.R.S. 2018, and C.A.R. 4(b)(3), we are asked to decide an issue left unresolved by another division in *People v. Slaughter*, 2019 COA 27. The *Slaughter* division held that charging a defendant with second degree assault by strangulation under section 18-3-203(1)(i), C.R.S. 2018, (strangulation subsection), *and* a crime of violence count under section 18-1.3-406(2)(a)(I)(A), C.R.S. 2018, violated his right to equal protection because the penalty was substantially more severe than if the defendant were charged with second degree assault under section 18-3-203(1)(b) (deadly weapon subsection), a per se crime of violence, for the same conduct. Consequently, the division affirmed the district court's order dismissing the crime of violence counts attached to the strangulation charges.

¶ 2    Here, we must decide whether a defendant may be charged with strangulation under both the deadly weapon and strangulation subsections of the second degree assault statute.[1] We hold that a

---

[1] Strangulation causing serious bodily injury constitutes first degree assault under section 18-3-202(1)(g), C.R.S. 2018. We only consider second degree assault strangulation here. Because the circumstances here and the legislative amendment concern manual strangulation, we offer no opinion on whether our analysis would apply to strangulation with a ligature or other instrument.

defendant may not be charged under both subsections for two reasons. First, we conclude that charging the same conduct under both subsections would violate a defendant's right to equal protection because the subsections carry different maximum penalties. Second, we conclude, from the legislative history, that when the General Assembly amended the second degree assault statute to add the strangulation subsection, it intended all strangulation conduct to be charged under this specific subsection, rather than under the more general deadly weapon subsection. Accordingly, we affirm the district court's order dismissing the second degree assault deadly weapon and crime of violence counts filed against the defendant, Dearies Deshonne Austin Lee.

## I.    Procedural Background

¶ 3    The prosecution originally charged Mr. Lee with two counts of second degree assault under section 18-3-203(1)(i) (strangulation subsection), one count of child abuse under section 18-6-401(1), (7)(b)(I), C.R.S. 2018, and a crime of violence sentence enhancer under section 18-1.3-406(2)(a)(I)(A). The prosecution later added a habitual child abuser sentence enhancer, under section 18-6-401.2, C.R.S. 2018, and two second degree assault charges under

2

section 18-3-203(1)(b) (deadly weapon subsection).  It also amended the crime of violence count to attach to all four second degree assault counts.

¶ 4    Shortly after *Slaughter* was announced, Mr. Lee moved to dismiss the second degree assault deadly weapon counts and the crime of violence sentence enhancer.  After a hearing, the court granted Mr. Lee's motion.  It concluded that a conviction under the deadly weapon subsection could produce a more severe penalty than a conviction under the strangulation subsection for the same conduct and thus, that a potential equal protection violation existed.  It dismissed the crime of violence counts based on *Slaughter*.

¶ 5    On appeal, the People contend that the district court erroneously interpreted *Slaughter*.  They rely on dicta in the case stating, "the prosecution, at least in theory, could have charged [the defendant] with second degree assault (not specifying acts amounting to strangulation) under section 18-3-203(1)(b) [the deadly weapon subsection]."  *Id.* at ¶ 20.  We agree with Slaughter's holding.  But, to the extent the *Slaughter* division intended to suggest that a defendant can be charged with strangulation under

3

both the deadly weapon and strangulation subsections, we disagree with it, because the legislative history, extensively discussed in *Slaughter*, reveals a contrary intent. Moreover, charging a defendant with the same strangulation conduct under both subsections would violate a defendant's right to equal protection, an issue the *Slaughter* division did not consider.

## II. Second Degree Assault Strangulation Conduct May Be Charged Only Under Section 18-3-203(1)(i)

### A. Standard of Review and Law

¶ 6 We review a court's legal conclusions and its dismissal of charges de novo. *People v. Porter*, 2015 CO 34, ¶ 8. We also interpret statutes de novo. *In re Estate of King*, 2019 COA 82, ¶ 11. When interpreting a statute, our primary goal is to ascertain and give effect to the General Assembly's intent. *Cowen v. People*, 2018 CO 96, ¶ 11. To do so, we examine the plain meaning of the statutory language. *Id.* We give consistent effect to all its parts and construe each provision in harmony with the overall statutory design. *Id.*

¶ 7      Before 2016, the People could charge manual strangulation resulting in bodily injury as a felony only under section 18-3-203(1)(b), which provides:

> (1) A person commits the crime of assault in the second degree if:
>
> …
>
> (b) With intent to cause bodily injury to another person, he or she causes such injury to any person by means of a deadly weapon[.]

Consequently, to obtain a felony conviction in the case of a manual strangulation, the prosecution was required to prove that the defendant's hands were a deadly weapon.

¶ 8      Second degree assault with a deadly weapon is a class four felony and constitutes a per se crime of violence.  *See* § 18-3-203(2)(b); *see also* § 18-1.3-406(2)(a)(I)(A), (II)(C).  A crime of violence conviction requires a court to sentence a defendant to prison for a term of at least the midpoint of the presumptive range but no more than twice the maximum of the presumptive range.  § 18-1.3-401(8)(a)(I), C.R.S. 2018.  However, in 2016 the General Assembly created an exception to this requirement for some second degree assault convictions, including under the deadly weapon

5

subsection.  Ch. 181, sec. 1, § 18-3-203, 2016 Colo Sess. Laws 620.

This exception at section 18-3-203(2)(c)(II) provides:

> If a defendant is convicted of assault in the
> second degree pursuant to paragraph (b), (c),
> (d), or (g) of subsection (1) of this section, the
> court shall sentence the offender in
> accordance with section 18-1.3-406; except
> that, notwithstanding the provisions of section
> 18-1.3-406, the court is not required to
> sentence the defendant to the department of
> corrections for a mandatory term of
> incarceration.

Consequently, a defendant convicted of second degree assault with

a deadly weapon may be sentenced to probation or community

corrections, but the length of any sentence, including one to prison,

must be in the range of five to sixteen years.  *See* § 18-1.3-

401(8)(a)(I).

¶ 9     In the same 2016 legislative session, the General Assembly

added the strangulation subsection to the second degree assault

statute.  Ch. 327, sec. 2, § 18-3-203, 2016 Colo. Sess. Laws 1328.

This subsection provides that a person commits second degree

assault when,

> [w]ith the intent to cause bodily injury, he or
> she applies sufficient pressure to impede or
> restrict the breathing or circulation of the
> blood of another person by applying such

pressure to the neck or by blocking the nose or mouth of the other person and thereby causes bodily injury.

§ 18-3-203(1)(i). This subsection allowed the prosecution, for the first time, to obtain a felony conviction for strangulation without the burden of proving that hands were a deadly weapon. And because this subsection does not include a deadly weapon element, it is not a per se crime of violence and thus is not listed in section 18-3-203(2)(c)(II)'s crime of violence exception. Rather, it is an extraordinary risk crime under section 18-1.3-401(10)(b)(XVIII). Therefore, a defendant convicted of strangulation can be sentenced to probation, community corrections, or prison for a period of two to eight years, *see id.*; § 18-1.3-401(1)(a)(V)(A), and cannot be charged with the crime of violence sentence enhancer, *Slaughter*, ¶ 52.

¶ 10    As noted in *Slaughter* and as the statutory language reveals, the potential for disparate charges and sentencing arising from the same strangulation conduct "renders ambiguous the statutory scheme for the charging and sentence of second degree assault by strangulation." *Id.* at ¶ 23. Therefore, as the *Slaughter* division did, we delve into the legislative history of the 2016 amendments to determine the General Assembly's intent in adding the

strangulation provision to the second degree assault statute and whether it contemplated strangulation charges arising under multiple provisions of the statute. *See* § 2-4-203(1)(c), C.R.S. 2018 (courts may consider legislative history as an aid in construing ambiguous statutes); *see also Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004) (when a statute conflicts with other provisions, an appellate court may look to legislative history).

## B.    Legislative History

¶ 11    The strangulation subsection originated as House Bill 16-1080. *Slaughter*, ¶ 25. Before its introduction, prosecutors routinely charged manual strangulation resulting in bodily injury under the deadly weapon subsection, § 18-3-203(1)(b), which required them to prove that hands were a deadly weapon. *See Slaughter*, ¶ 26. Such proof often required expert testimony. In rural jurisdictions, prosecutors found it difficult to retain such experts and, consequently, frequently obtained verdicts for the lesser offense of misdemeanor third degree assault (requiring proof of bodily injury without a deadly weapon). *See id.*; *Assault by Strangulation: Hearing on H.B. 16-1080 before H. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statements of Rep.

Mike Foote, Member, H. Judiciary Comm., sponsor of H.B. 16-1080, and Mark Hurlbert, Assistant Arapahoe County District Attorney). Thus, a goal of House Bill 16-1080 was to create a specific strangulation statute that dispensed with proof of the deadly weapon element. *See* § 18-3-203(1)(i); *Assault by Strangulation: Hearing on H.B. 16-1080 before H. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statement of Rep. Mike Foote, sponsor of H.B. 16-1080) ("The elements [of subsection (1)(i)] don't require the finding of hands as a deadly weapon."); *see also Slaughter*, ¶ 30.

¶ 12 Testimony before the General Assembly revealed that another goal of the bill was to make strangulation a stand-alone criminal offense due to a disparity in charging decisions and verdicts for strangulation conduct across the state. According to the bill's proponents, the legislation was intended to unify and elevate all forms of strangulation resulting in bodily injury to a felony in order to more consistently punish this type of behavior, which is particularly prevalent in domestic violence situations. *See Assault by Strangulation: Hearing on H.B. 16-1080 before S. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Apr. 27, 2016)

(statement of Rep. John Cooke, Member, S. Judiciary Comm., sponsor of H.B. 16-1080) ("We want to increase this to a felony[.]"); *Assault by Strangulation: Hearing on H.B. 16-1080 before H. Judiciary Comm.*, 70th Gen. Assemb., 2d Reg. Sess. (Feb. 9, 2016) (statement of Rep. Mike Foote, sponsor of H.B. 16-1080) ("Our law currently does not recognize strangulation as a specific offense. It's prosecuted right now under various levels of assault in our code, but there is nothing in our code that actually recognizes strangulation as a specific subset of assault, and this is what this bill would address. And, we would be in the vast majority of states to adopt language like this that recognizes strangulation as a specific type of assault offense."); *see also Slaughter*, ¶ 27.

¶ 13    The passage of House Bill 16-1080 created sections 18-3-203(1)(i) and 18-3-202(1)(g) (first degree strangulation requiring proof of "intent to cause serious bodily injury" and "serious bodily injury"), and, for the first time, allowed prosecutors to obtain a felony conviction for strangulation without proving that the defendant's hands were a deadly weapon. *See* § 18-3-203(1)(i).

10

### C. Equal Protection Problem

¶ 14     We now address the district court's equal protection ruling. Relying on *Slaughter*, the People contend that an equal protection violation occurs only when a defendant is charged with strangulation under section 18-3-203(1)(i) *and* the crime of violence sentence enhancer under section 18-1.3-406(2)(a)(I)(A).  They further argue that, in the dicta recited above, the *Slaughter* division specifically sanctioned their ability to charge under both the deadly weapon and strangulation subsections.  We are not persuaded because the statutory language and the legislative history belie their contention.  Moreover, when a statute is susceptible of both constitutional and unconstitutional constructions, we must adopt the constitutional construction where it is reasonably consistent with legislative intent.  *People in re R.M.D.*, 829 P.2d 852, 853 (Colo. 1992); *People v. Felgar*, 58 P.3d 1122, 1124-25 (Colo. App. 2002).

### 1. Charging Strangulation Under Both Subsections Violates a Defendant's Right to Equal Protection

¶ 15     The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV, § 1. For Colorado state law purposes, the right to equal protection is provided in article II, section 25, of the Colorado Constitution. *People v. Stewart,* 55 P.3d 107, 114 (Colo. 2002). "[E]qual protection of the laws requires that statutory classifications of crimes be based on differences that are real in fact and reasonably related to the general purposes of criminal legislation." *People v. Marcy,* 628 P.2d 69, 74 (Colo. 1981). Unlike federal jurisprudence, which finds no equal protection problem when statutes proscribe identical conduct and authorize different penalties, Colorado law takes a "stricter view" by consistently holding that statutes proscribing identical conduct and carrying disparate penalties violate equal protection unless there are reasonable distinctions in the proscribed conduct. *Stewart,* 55 P.3d at 114 (collecting cases).

¶ 16    "To determine whether two statutes proscribe identical conduct, we analyze the elements of each." *Id.* at 115. To avoid equal protection problems, criminal statutes must (1) adequately define the act and the mental state of each offense so that fair warning is given to all persons concerning the nature of the proscribed conduct and the resulting penalties; (2) reasonably

differentiate between the more serious and the less serious conduct; and (3) prescribe penalties that are proportionate to the seriousness of the offenses. *Marcy*, 628 P.2d at 73. Equal protection requires that differences in prohibited conduct be "real in fact and reasonably related to the general purposes of criminal legislation." *Id.* at 74. And where, as here, the constitutional challenge is as-applied, we must examine the case's circumstances. *People v. Ford*, 232 P.3d 260, 263 (Colo. App. 2009); *compare People v. Jefferson*, 748 P.2d 1223 (Colo. 1988) (facial equal protection challenge), *with Slaughter*, ¶ 15 (as applied equal protection challenge).

¶ 17    Here, as noted above, the maximum penalties for strangulation under the deadly weapon and strangulation subsections are different — a defendant convicted of strangulation under the deadly weapon subsection faces a maximum prison sentence of sixteen years while the same defendant convicted of the same conduct under the strangulation subsection faces a maximum prison sentence of only eight years. Yet, both subsections require proof of an intent to cause bodily injury and both require proof that bodily injury resulted from the conduct.

¶ 18 We agree with the People that a prosecutor is legally permitted to charge separate offenses for the same conduct. *Jefferson*, 748 P.2d at 1226. But we disagree with their assertion that there is a meaningful difference between manual strangulation under the deadly weapon and strangulation subsections — the conduct is the same; only the characterization of the instrument of the conduct is different. *See Marcy*, 628 P.2d at 78 (Differences in proscribed conduct "without a sufficiently pragmatic difference" violate a defendant's right to equal protection.).

¶ 19 Moreover, whether a defendant suffers the higher penalty would depend entirely on the prosecutor's charging discretion. *See Slaughter*, ¶ 51. And while we agree with the People that the subsections' elements differ and that the deadly weapon subsection applies to a wide "range of unspecified conduct," *Stewart*, 55 P.3d at 115, we perceive no scenario in which the manual strangulation conduct described in subsection (1)(i) would not also satisfy subsection (1)(b), nor have the People offered one. *See Marcy*, 628 P.2d at 80 ("[A]n evenhanded application of the laws turns on reasonably intelligible standards of criminal culpability.").

¶ 20    Recognizing that we must construe statutes to avoid unconstitutional results, we conclude that manual strangulation causing bodily injury may only be charged under section 18-3-203(1)(i).  Therefore, we affirm the district court's order dismissing the deadly weapon and crime of violence counts against Mr. Lee. *See People In Interest of J.D.*, 2017 COA 156, ¶ 10 ("We are . . . instructed to construe statutes and rules to avoid unconstitutional results.") (*cert. granted on other grounds* Sept. 17, 2018).

### 2. The General Assembly Intended That All Strangulations Causing Bodily Injury Be Charged Under the Strangulation Subsection

¶ 21    Our resolution of the equal protection issue is supported by the legislative history that reveals the General Assembly's intent to specifically carve out the crime of strangulation resulting in bodily injury and to make it a felony in all instances.

¶ 22    Well-settled law permits a prosecutor to charge separate offenses for the same conduct. *People v. James*, 178 Colo. 401, 404, 497 P.2d 1256, 1257 (1972).  Indeed, section 18-1-408(7), C.R.S. 2018, says,

> If the same conduct is defined as criminal in different enactments or in different sections of this code, the offender may be prosecuted

15

under any one or all of the sections or enactments subject to the limitations provided by this section. It is immaterial to the prosecution that one of the enactments or sections characterizes the crime as of lesser degree than another, or provides a lesser penalty than another, or was enacted by the general assembly at a later date than another unless the later section or enactment specifically repeals the earlier.

¶ 23    It is equally well settled that enactment of a specific criminal statute does not preclude prosecution under a general criminal statute "unless a legislative intent is shown to limit prosecution to the special statute." *People v. Bagby*, 734 P.2d 1059, 1061 (Colo. 1987). In most instances, we determine whether the General Assembly intended to supplant a general statute for a more specific statute by examining three factors:

> (1) whether the [specific] statute invokes the full extent of the state's police powers; (2) whether the specific statute is part of an act creating a comprehensive and thorough regulatory scheme to control all aspects of a substantive area; and (3) whether the act carefully defines different types of offenses in detail.

*People v. Smith*, 938 P.2d 111, 116 (Colo. 1997); *see also Bagby*, 734 P.2d at 1062. But here, because the statute is ambiguous, we

16

may discern legislative intent from the legislative history. *See Slaughter*, ¶ 23.

¶ 24    As noted above, the legislative history shows that the General Assembly intended to eliminate misdemeanor convictions for strangulation resulting in bodily injury and to make all such strangulations felony offenses, recognizing that this conduct constitutes serious domestic violence behavior and that the enhanced punishment is consistent with that of the vast majority of other states. The General Assembly did this in two ways: (1) by specifically defining what constitutes strangulation (applying sufficient pressure to impede or restrict breathing or blood circulation by applying pressure to the neck or by blocking the nose or mouth); and (2) by removing the deadly weapon element, thereby lowering the prosecution's burden of proof. Indeed, removing the deadly weapon element necessarily removed strangulation from the list of crimes constituting per se crimes of violence. That the General Assembly intended this trade-off — no per se crime of violence in exchange for all strangulations resulting in bodily injury constituting a felony — is evident from the testimony given during the bill's consideration.

¶ 25    As well, the General Assembly added the crime of violence

exception found in section 18-3-203(2)(c)(II) during the same

legislative session, and it specifically excluded strangulation from

the exception, further evidencing that this trade-off was deliberate.

*See People v. Garcia*, 2016 COA 124, ¶ 9 ("Courts presume that the

General Assembly intended the entire statute to be effective."); *see*

*also Pinnacol Assurance v. Hoff*, 2016 CO 53, ¶ 48 ("We construe

the legislature's failure to include particular language not as an

oversight, but as a deliberate omission reflecting legislative intent.").

¶ 26    Accordingly, we conclude that the General Assembly has

demonstrated its intent to limit prosecution for manual

strangulation resulting in bodily injury to the strangulation

subsection in section 18-3-203(1)(i).  *See Bagby*, 734 P.2d at 1062.

It may, and it did in the first degree assault statute, section 18-3-

202(1)(g), provide a harsher penalty for strangulation that results in

serious bodily injury.  *See Stewart*, 55 P.3d at 114-15 ("The general

assembly may establish more severe penalties for acts that it

believes have graver consequences, even if the differences are only a

matter of degree.").

¶ 27    Finally, because we affirm the district court's order, we need not address Mr. Lee's other contentions.  *See Qwest Corp. v. City of Northglenn*, 2014 COA 55, ¶ 27 (appellate court need not reach all issues if one issue is dispositive).

### III.   Conclusion

¶ 28    The order is affirmed.

JUDGE FOX and JUDGE WELLING concur.